# 22-1108

*To Be Argued By*:
LUCAS ISSACHAROFF

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 22-1108

◄━◆◆◆►━

SELIM ZHERKA, "SAM,"

*Plaintiff-Appellant*,

—v.—

MERRICK B. GARLAND, Attorney General of the United States,
in his official capacity,

*Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# BRIEF FOR DEFENDANT-APPELLEE

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for Defendant-Appellee.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2737

LUCAS ISSACHAROFF,
BENJAMIN H. TORRANCE,
  *Assistant United States Attorneys,
    Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . .  3

Issues Presented for Review . . . . . . . . . . . . . . . . . . .  3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . .  4

    A.   Procedural History . . . . . . . . . . . . . . . . . . . .  4

    B.   Zherka's Conviction and Sentence. . . . . . . .  4

    C.   Zherka's Constitutional Challenge and the
         District Court's Opinion . . . . . . . . . . . . . . .  5

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . .  7

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . .  9

POINT I—Section 922(g)(1) Does Not Violate the
    Second Amendment as Applied to Zherka. . . .  10

    A.   Zherka Is Not a "Law-Abiding, Responsible
         Citizen" Entitled to Second Amendment
         Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

    B.   The Historical Record Confirms that
         Applying § 922(g)(1) to Zherka Does Not
         Implicate the Second Amendment. . . . . . .  17

    C.   Remand and Vacatur Is Not Warranted. .  26

ii

PAGE

POINT II—The Absence of an Opportunity to Prove
    Additional Facts Does Not Deprive Zherka of
    Due Process ........................... 29

CONCLUSION ............................... 32

# TABLE OF AUTHORITIES

*Cases*:

*Ajlani v. Chertoff,*
545 F.3d 229 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 9

*Baze v. Rees,*
553 U.S. 35 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Binderup v. Attorney General,*
836 F.3d 336 (3d Cir. 2016) . . . . . . . . . . . . . 13, 31

*Connecticut Department of Public Safety v. Doe,*
538 U.S. 1 (2003) . . . . . . . . . . . . . . . . . . . . 7, 30, 31

*District of Columbia v. Heller,*
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . *passim*

*Duncan v. Bonta,*
49 F.4th 1228 (9th Cir. 2022) . . . . . . . . . . . . . . . 28

*Folajtar v. Attorney General,*
980 F.3d 897 (3d Cir. 2020) . . . . . . . . . . 13, 24, 25

*Hamilton v. Pallozzi,*
848 F.3d 614 (4th Cir. 2017) . . . . . . . . . 12, 23, 25

*Hatfield v. Barr,*
925 F.3d 950 (7th Cir. 2019) . . . . . . . . . . . . . . . . 24

*Jones v. Bonta,*
47 F.4th 1124 (9th Cir. 2022) . . . . . . . . . . . . . . . 28

*Jordan v. De George,*
341 U.S. 223 (1951) . . . . . . . . . . . . . . . . . . . . . . . 24

*Kanter v. Barr*,
 919 F.3d 437 (7th Cir. 2019) . . . . . . . . . . . . 25, 31

*Martinez v. Villanueva*,
 No. 20-56233, 2022 WL 2452308
 (9th Cir. July 6, 2022). . . . . . . . . . . . . . . . . . . . . 28

*McDonald v. City of Chicago*,
 561 U.S. 742 (2010). . . . . . . . . . . . . . . . . . . . . . . 11

*Medina v. Sessions*,
 279 F. Supp. 3d 281 (D.D.C. 2017) . . . . . . . . . . 29

*Medina v. Whitaker*,
 913 F.3d 152 (D.C. Cir. 2019). . . . . . . . . . . *passim*

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
 804 F.3d 242 (2d Cir. 2015) . . . . . . . . . . . . . . . . 26

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
 142 S. Ct. 2111 (2022). . . . . . . . . . . . . . . . . *passim*

*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*,
 140 S. Ct. 1525 (2020). . . . . . . . . . . . . . . . . . . . . 14

*Oakland Tactical Supply, LLC v. Howell Township*,
 No. 21-1244, 2022 WL 3137711
 (6th Cir. Aug. 5, 2022) . . . . . . . . . . . . . . . . . . . . 28

*Range v. Attorney General*,
 53 F.4th 262 (3d Cir. 2022) . . . . . . . . . . . . . *passim*

*Richardson v. Ramirez*,
 418 U.S. 24 (1974). . . . . . . . . . . . . . . . . . . . . . . . 23

*Sibley v. Watches,*
  No. 21-1986, 2022 WL 2824268
  (2d Cir. July 20, 2022) . . . . . . . . . . . . . . . . . . . . . 28

*Spencer v. Kemna,*
  523 U.S. 1 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Taveras v. New York City,*
  No. 21-398, 2022 WL 2678719
  (2d Cir. July 12, 2022) . . . . . . . . . . . . . . . . . . . . . 28

*Tyler v. Hillsdale County Sheriff's Dep't,*
  837 F.3d 678 (6th Cir. 2016) . . . . . . . . . . . . . . . . 24

*United States v. Anderson,*
  559 F.3d 348 (5th Cir. 2009) . . . . . . . . . . . . . . . . 12

*United States v. Bogle,*
  717 F.3d 281 (2d Cir. 2013) . . . . . . . . . . . . . 11, 17

*United States v. Fell,*
  531 F.3d 197 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 9

*United States v. McCane,*
  573 F.3d 1037 (10th Cir. 2009) . . . . . . . . . . . . . 11

*United States v. Peguero,*
  34 F.4th 143 (2d Cir. 2022) . . . . . . . . . . . . . . . . 17

*United States v. Rozier,*
  598 F.3d 768 (11th Cir. 2010) . . . . . . . . . . . . . . 11

*United States v. Scroggins,*
  599 F.3d 433 (5th Cir. 2010) . . . . . . . . . . . . . . . 11

*United States v. Skoien,*
  614 F.3d 638 (7th Cir. 2010) . . . . . . . . . . . . 21, 31

PAGE

*Statutes*:

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. § 925(c) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1865(b)(5) . . . . . . . . . . . . . . . . . . . . . . 23

1 W. & M., Sess. 2, ch. 2, § 7 (Eng. 1689) . . . . . . . . 19

18 Pa. Const. & Stat. Ann. § 6109(e)(viii). . . . . . . . . 16

Act of June 13, 1777, § 1 (1777), 9 The *Statutes*: at
    Large of Pennsylvania from 1652-1801 (William
    Stanley Ray ed., 1903) . . . . . . . . . . . . . . . . . . . . . 20

An Act to Oblige the Free Male Inhabitants of this
    State Above a Certain Age to Give Assurance of
    Allegiances to the Same, and for Other Purposes
    ch. III (1777), 9 *Statutes*: at Large; Being a
    Collection of All the Laws of Virginia, from the
    First Session . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Ga. Code Ann. § 16-11-129(b)(2)(B). . . . . . . . . . . . . 15

Haw. Rev. Stat. Ann. § 134-7 . . . . . . . . . . . . . . . . . . 15

La. Stat. Ann. § 40:1379.3(C)(6) . . . . . . . . . . . . . . . 16

Tex. Gov't Code Ann. § 411.172(a)(3) . . . . . . . . . . . 16

W. Va. Code Ann. § 61-7-4(b)(5) . . . . . . . . . . . . . . . 16

PAGE

*Other Authorities*:

2 Bernard Schwartz, *The Bill of Rights: A
    Documentary History* (1971) . . . . . . . . . . . . . . . 21

4 William Blackstone, Commentaries on the Laws of
    England (Harper ed. 1854) . . . . . . . . . . . . . . . . . . 22

Ann Fairfax Withington & Jack Schwartz, *The
    Political Trial of Anne Hutchinson*,
    51 New Eng. Q. 226 (1978) . . . . . . . . . . . . . . . . . . 20

Edmund S. Morgan, *The Case Against Anne
    Hutchinson*, 10 New Eng. Q. 635 (1937) . . . . . . . 20

Michael A. Bellesiles, *Gun Laws in Early America:
    The Regulation of Firearms Ownership, 1607-
    1794*, 16 Law & Hist. Rev. 567 (1998) . . . . . . . . . 19

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 22-1108

———

SELIM ZHERKA, "SAM,"

*Plaintiff-Appellant,*

—v.—

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE
UNITED STATES, IN HIS OFFICIAL CAPACITY,

*Defendant-Appellee.*

———

## BRIEF FOR DEFENDANT-APPELLEE

———

### Preliminary Statement

Plaintiff-appellant Selim "Sam" Zherka, who has pleaded guilty to a federal fraud conspiracy and was sentenced to multiple years in prison, challenges the constitutionality of 18 U.S.C. § 922(g)(1), which generally bars individuals who have been convicted of a crime punishable by imprisonment for more than one year from possessing, receiving, or shipping firearms in interstate commerce.

The Supreme Court has repeatedly held that the Second Amendment protects the right of "law-abiding responsible citizens" to bear arms. Felons, including

those guilty of fraud-type offenses or other non-violent crimes, are therefore not entitled to relief under the Second Amendment from a federal statute that disarms them based on their failure to abide by the law. The historical record confirms that understanding. Under English, colonial, and early American law, those who were seen as disobedient to the sovereign and to the rule of law were subject to disarmament by legislatures, despite state constitutions' guarantees of the right to bear arms. The ratification debates and early American state law likewise reflect that legislatures could disarm individuals who were seen as posing threats to an orderly society and the rule of law. And, historically, serious crimes—violent and nonviolent alike—were punishable by death and estate forfeiture, which necessarily exposed these non-law-abiding citizens to forfeiture of firearms. Thus, as the district court held, Zherka, by virtue of his felony conviction, falls outside the scope of the Second Amendment's protections, and is properly subject to § 922(g)(1)'s ban on possession of firearms by felons. Nothing in the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), alters this conclusion or casts doubt upon the district court's decision, which confined itself to determining the scope of the Second Amendment right under the text-and-history standard that *Bruen* requires. And because § 922(g)(1) is constitutional as applied to Zherka in light of his conviction for a serious fraud felony, he has no due process right to a hearing to evaluate his immaterial assertions regarding his present dangerousness.

Accordingly, the judgment of the district court should be affirmed.

## Jurisdictional Statement

The district court had jurisdiction over Zherka's claims under 28 U.S.C. § 1331, because those claims arose under the Constitution and laws of the United States. The district court entered final judgment dismissing the complaint on March 23, 2022. (Joint Appendix ("JA") 131). Zherka filed a timely notice of appeal on May 20, 2022. (JA 132). Accordingly, this Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Issues Presented for Review

1. Whether the district court correctly held that 18 U.S.C. § 922(g)(1), which prohibits persons convicted of a crime punishable by more than one year of imprisonment from possessing firearms, is constitutional under the Second Amendment as applied to Zherka, who has been convicted of a felony fraud crime subject to penalties of more than one year in prison.

2. Whether the district court correctly held that the unavailability of relief under 18 U.S.C. § 925(c), which previously allowed the Attorney General to grant relief from § 922(g)'s firearms disability but has been defunded since 1992, did not violate Zherka's due process rights because he has no due process right to a hearing.

## Statement of the Case

### A. Procedural History

Zherka commenced this action on September 11, 2020, claiming that § 922(g)(1) violates the Second Amendment as applied to him and that the unavailability of relief under § 925(c) violates his due process rights under the Fifth Amendment. (JA 5-15). On April 9, 2021, the government moved to dismiss the complaint. (Dist. Ct. ECF Nos. 12, 13). On March 23, 2022, the district court (Philip M. Halpern, J.) granted the government's motion and entered judgment against Zherka. (JA 118-30, 131). Zherka filed a notice of appeal on May 20, 2022. (JA 132).

### B. Zherka's Conviction and Sentence

On December 22, 2015, Zherka pleaded guilty in the United States District Court for the Southern District of New York to one count of criminal conspiracy under 18 U.S.C. § 371, whose objects were to make a false statement to a bank and to sign and file a false federal income tax return. (JA 6). Section 371 carries a maximum statutory penalty of five years' imprisonment. Zherka was sentenced to 37 months' incarceration, along with a fine of $1.5 million, and ordered to pay over $1.8 million in restitution and over $5.2 million as a forfeiture. (JA 6); *United States v. Zherka*, 14 Cr. 545, ECF No. 168 (judgment). Zherka was ultimately released from prison on or about January 4, 2017, and served the remainder of his sentence in home confinement until May 26, 2017 (JA 6).

## C. Zherka's Constitutional Challenge and the District Court's Opinion

Zherka brought suit seeking declaratory and injunctive relief from 18 U.S.C. § 922(g)(1)'s bar on firearm possession, despite his undisputedly falling within the statute's scope. (JA 14-15). The government moved to dismiss on the grounds that Zherka was not entitled to the Second Amendment's protections, that § 922(g)(1) was constitutional as applied to him, and that Zherka could not challenge the absence of § 925(c) relief.

The district court granted the government's motion to dismiss. (JA 118-30). The district court began by laying out the Second Circuit's then-governing framework for considering Second Amendment challenges: "First, courts must determine whether the challenged legislation impinges upon conduct protected by the Second Amendment. Second, if a court finds that a law implicates the Second Amendment as *Heller* instructed courts to interpret it, then the court must determine the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny." (JA 122 (quotation marks, brackets, and citations omitted)).

At the first step of this inquiry, the district court determined that Zherka had "failed to plausibly allege that he is among 'the people' to whom the Second Amendment right applies, namely *'law-abiding responsible citizens.'*" (JA 123 (quotation marks and citation omitted; quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); emphasis in district court's opinion)). "Accordingly, Plaintiff's as-applied

challenge fails at the first step of the analysis."
(JA 123). The district court noted that courts have uniformly rejected both facial challenges to § 922(g)(1)
and as-applied challenges brought by felons. The district court found the D.C. Circuit's opinion in *Medina
v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019), to be "particularly instructive." (JA 124). There, the D.C. Circuit
rejected the argument that only dangerous felons were
historically barred from firearms possession, concluding under a text-and-history approach "that a felony
conviction 'removes one from the scope of the Second
Amendment.'" (JA 125 (quoting *Medina*, 913 F.3d at
160)).

The district court went on to examine Zherka's particular felony conviction, holding that, even though his
offense did not include violence as an element, "the
bottom line is that Plaintiff is not a law-abiding, responsible citizen for Second Amendment purposes. He
is a felon who was convicted just over six years ago of
an extremely serious crime." (JA 126). The district
court therefore "conclude[d] that his status as a felon,
albeit a non-violent one, necessarily removes him from
the category of 'law-abiding, responsible citizens' entitled to possess firearms." (JA 126 (quoting *Heller*, 554
U.S. at 635)).

Having determined that Zherka's challenge failed
at the first step, the district court determined that it
"need not and [thus did] not reach the second step of
the analysis," namely, the means-end scrutiny then
applicable under this Court's law. (JA 127). The district court further noted that the government had argued that if the court reached the second step,

intermediate scrutiny would apply and § 922(g)(1) would survive such scrutiny. (JA 127 n.7). Zherka, however, did not oppose either of these arguments, and therefore "abandoned these aspects of his Second Amendment claim." (JA 127 n.7).

Finally, the court turned to Zherka's Fifth Amendment claim. The district court rejected Zherka's contention that he should be provided a hearing "to determine whether (i) he is, in fact, currently dangerous; and (ii) he should have his ability to possess firearms reinstated," because such a hearing could not possibly affect the application of § 922(g)(1), which is predicated on the simple fact of his felony conviction. (JA 128-29). The district court relied upon *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), in which the Supreme Court rejected a convicted sex offender's due process claim against an automatic registration requirement. (JA 128-29). "The Supreme Court, in rejecting the sex offenders' challenge, held that individualized hearings were not required because the registration requirement was based 'on the fact of previous conviction, not the fact of current dangerousness.'" (JA 129 (quoting *Doe*, 538 U.S. at 4)). Accordingly, because a hearing could not bear upon the dispositive fact at issue, the district court rejected Zherka's due process claim.

This appeal followed. (JA 132).

## Summary of Argument

The Second Amendment protects the right of "law-abiding, responsible citizens" to bear arms, as the Supreme Court has repeatedly stated—including in its

recent decision in *Bruen*. But that category does not include felons. Indeed, the Supreme Court has repeatedly stated that its Second Amendment cases do not cast doubt on the longstanding and presumptively lawful prohibitions on possession of arms by felons, who fall decidedly outside the definition of law-abiding responsible citizens. For that reason, every court of appeals to consider the question has concluded that § 922(g)(1)'s felon possession ban is constitutional as applied to felons, including fraudsters and others convicted of non-violent crimes. And in *Bruen*, the Supreme Court itself endorsed licensing regimes that require criminal background checks to ensure that those bearing arms are law-abiding citizens. Since *Bruen*, every court to consider the issue has upheld § 922(g)(1) against Second Amendment challenges—including the Third Circuit in a comprehensive published opinion. *See infra* Point I.A.

The historical record confirms that understanding. As the Third Circuit's recent decision explained based on an exhaustive review of the historical record, those whose status or conduct demonstrated disobedience of the sovereign or disrespect for the rule of law, whether or not they were violent, were widely understood not to possess the right to bear arms under both English and colonial law, during the ratification debates, and under early American state law. Legislatures therefore had wide discretion to impose measures disarming those persons. Much like the rights to vote, serve on a jury, or hold public office, the right to bear arms has long been understood to be subject to forfeiture by those convicted of crimes. *See infra* Point I.B.

For those reasons, the Court should affirm the district court's judgment, and may do so without remanding for further consideration. *Bruen* rejected the means-end scrutiny that this Court and others had identified as the second step of the Second Amendment inquiry—but in this case, the district court never reached that second step, as it concluded that felons may be categorically excluded from the Second Amendment's right to bear arms. Because that analysis is consistent with the *Bruen* framework, it may be reviewed and affirmed by this Court without further proceedings. *See infra* Point I.C.

Finally, due process does not entitle Zherka to a hearing regarding whether he is dangerous. Section 922(g)(1) prohibits possession of firearms by all felons, regardless of their dangerousness; any hearing on that question would therefore not be material, and accordingly is not required by due process. *See infra* Point II.

For all of those reasons, the district court's dismissal of Zherka's complaint should be affirmed.

## ARGUMENT

### Standard of Review

This Court "review[s] a judgment of dismissal *de novo*, whether the judgment is based on a lack of subject matter jurisdiction or the failure to state a claim on which relief can be granted." *Ajlani v. Chertoff*, 545 F.3d 229, 233 (2d Cir. 2008). Similarly, conclusions of law and constitutional questions are reviewed de novo. *United States v. Fell*, 531 F.3d 197, 209 (2d Cir. 2008).

## POINT I

### Section 922(g)(1) Does Not Violate the Second Amendment as Applied to Zherka

The Constitution protects an individual right to keep and bear arms—but, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). A "variety" of firearm regulations—including "longstanding prohibitions on the possession of firearms by felons"—are consistent with the Second Amendment. *Id.* at 626, 636; *see New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2162 (2022) (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons" are constitutional). To identify categories of lawful restrictions, courts look to "the Second Amendment's plain text" and, if that text "covers an individual's conduct," to "this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Under that text-and-history approach, prohibiting possession of firearms by felons, whether or not their crime was violent, is a permissible exercise of Congress's authority.

### A. Zherka Is Not a "Law-Abiding, Responsible Citizen" Entitled to Second Amendment Rights

The Supreme Court in *Heller* defined the right to bear arms as limited to "law-abiding, responsible citizens." 554 U.S. at 635. Consistent with that definition, the Court cautioned that "nothing in [its] opinion should be taken to cast doubt" on "longstanding

prohibitions on the possession of firearms by felons," which are "presumptively lawful." *Id*. at 626-27 & n.26. The Court described these "permissible" measures as falling within "exceptions" to the protected right to bear arms. *Id*. at 635. In *McDonald v. City of Chicago*, a plurality of the Court "repeat[ed]" its "assurances" that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626). And just this past term, the Supreme Court confirmed yet again that the right to keep and bear arms belongs only to "law-abiding" citizens. *Bruen*, 142 S. Ct. at 2122.

Zherka's felony fraud conviction thus places him outside the Second Amendment's scope. As the district court concluded (JA 124-26), and as several courts of appeals—including this Court—have recognized, the Supreme Court's clear statements regarding felon-possession laws demonstrate that felons as a class are not among the law-abiding citizens protected by the Second Amendment. *See United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) ("join[ing] every other circuit to consider the issue in affirming that § 922(g)(1) is a constitutional restriction"); *id*. at 282 n.1 (collecting cases from other circuits); *accord United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (holding that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment"); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (explaining that after *Heller*, the Fifth Circuit has

"reaffirmed [its] prior jurisprudence" holding "that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate" the Second Amendment (citing *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009))).

Other courts of appeals have relied on a combination of constitutional text, history, and tradition to uphold prohibitions on firearm possession by felons—including the Third Circuit, which recently issued a comprehensive decision upholding § 922(g)(1) in the wake of *Bruen*. *Range v. Attorney General*, 53 F.4th 262, 266 (3d Cir. 2022) (holding that a conviction for an offense covered by § 922(g)(1) categorically "places [an individual] outside the class of people traditionally entitled to Second Amendment rights"); *see Medina v. Whitaker*, 913 F.3d 152, 157-61 (D.C. Cir. 2019) ("look[ing] to tradition and history"—that is, "step one" of the then-prevailing framework—for confirmation that "felons are excluded from the scope of the Second Amendment"); *Hamilton v. Pallozzi*, 848 F.3d 614, 625-27 (4th Cir. 2017) ("hold[ing] that a challenger convicted of a state law felony generally cannot satisfy step one"). Indeed, "no circuit" has ever "held [18 U.S.C. § 922(g)(1)] unconstitutional as applied to a convicted felon." *Medina*, 913 F.3d at 155.[1]

––––––––––

[1] Some courts of appeals before *Bruen* left "open the possibility of a successful felon as-applied challenge," but "[o]nly one court" of appeals has "held § 922(g)(1) unconstitutional in any of its

The Supreme Court's recent decision in *Bruen* reinforces the conclusion that § 922(g)(1) permissibly disarms felons. *Bruen* defines the Second Amendment as limited to "law-abiding" citizens no fewer than fourteen times. 142 S. Ct. at 2122, 2125, 2131, 2133, 2134,

---

applications." *Medina*, 913 F.3d at 155. In *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc), a narrow majority of the en banc Third Circuit held § 922(g)(1) unconstitutional as applied to two state-law misdemeanants. A majority of the court recognized, however, that there is ample historical justification for disarming individuals convicted of serious crimes, violent or nonviolent. *See id.* at 349 (plurality op. of Ambro, J.); *id.* at 387 (Fuentes, J., concurring in part, dissenting in part, and dissenting from the judgments). Zherka's claim that he cannot be disarmed as a consequence of his federal felony fraud offense would have therefore failed under the only precedent that has ever upheld a challenge to this statute—a precedent that has since been overtaken. *See Range*, 53 F.4th at 270 n.9, 285 (*Binderup*'s "multifactored seriousness inquiry no longer applies" in the Third Circuit because "our Nation's tradition of firearm regulation permits the disarmament of those who committed felony or felony-equivalent offenses"); *see also Folajtar v. Attorney General*, 980 F.3d 897, 910 (3d Cir. 2020) (concluding, under the *Binderup* framework, that a conviction for an offense labeled a felony is "generally conclusive evidence" that the offender has forfeited the right to bear arms).

2138, 2150, 2156.[2] Consistent with that principle, while *Bruen* invalidated New York's "may issue"

_____

[2] Beyond the majority opinion, six justices took pains to emphasize that *Bruen* did nothing to upset *Heller*'s and *McDonald*'s reassurances that certain firearms regulations, such as prohibitions on the possession of firearms by felons, are constitutional. *See id.* at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . , about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," including the "longstanding prohibitions on the possession of firearms by felons" discussed in *Heller* and *McDonald* (quoting *Heller*, 554 U.S. at 626)); *id.* at 2189 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding" permitting felons to be prohibited from possessing firearms). In addition, just two years earlier, Justice Thomas and Justice Gorsuch agreed that *Heller* and *McDonald* "recognized that history supported the constitutionality of some laws limiting the right to possess a firearm, such as laws banning firearms from certain sensitive locations and prohibiting possession by felons and other dangerous individuals." *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1540-41 (2020) (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting). Thus, eight

licensing regime, it approved "shall-issue" regimes that "require applicants to undergo a background check or pass a firearms safety course."[3] *Id.* at 2138 n.9; *see id.* at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible[ ] . . . ."). In reaching that result, the Court had no need to analyze the history of shall-issue licensing regimes. Instead, the Court explained that such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms . . . are, in fact 'law-abiding, responsible citizens.'" *Id.* at 2138 n.9 (majority op.) (quoting *Heller*, 554 U.S. at 635).[4] That reasoning

_____

of the nine members of the *Bruen* Court have explicitly approved of *Heller*'s and *McDonald*'s reassurances regarding felon dispossession statutes.

[3] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *Bruen*, 142 S. Ct. at 2123. By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria." *Id.* at 2124.

[4] Indeed, many of the "shall issue" regimes approved of by *Bruen* independently prohibit the issuance of licenses to felons regardless of the nature of the felony. *See, e.g.*, Ga. Code Ann. § 16-11-129(b)(2)(B) (prohibiting issuance of weapons license to "[a]ny person who has been convicted of a felony"); Haw. Rev.

underscores that § 922(g)(1), which likewise aims to ensure that "those bearing arms" are "law-abiding, responsible citizens," accords with the Second Amendment. *Id*. That is the conclusion that has been reached not only by the Third Circuit, but also by numerous district courts that have overwhelmingly rejected post-*Bruen* challenges to § 922(g)(1). *See Range*, 53 F.4th at 268 n.6 (collecting cases).

The court of appeals decisions discussed above, including this Court's decision in *Bogle*, have not been overtaken by *Bruen*. In fact, because this Court's categorical holding in *Bogle* had nothing to do with the sort of means-end scrutiny that *Bruen* abrogated, it remains controlling precedent. This Court should once again "affirm[] that § 922(g)(1)," which affects only those who are non-law-abiding, "is a constitutional

---

Stat. Ann. § 134-7 ("No person who . . . has been convicted in this State or elsewhere of having committed a felony . . . shall own, possess, or control any firearm"); La. Stat. Ann. § 40:1379.3(C)(6) (requiring that applicant "[n]ot be ineligible to possess a firearm by virtue of having been convicted of a felony"); 18 Pa. Const. & Stat. Ann. § 6109(e)(viii) (license shall not be issued to "individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year"); Tex. Gov't Code Ann. § 411.172(a)(3) (applicant must be person who "has not been convicted of a felony"); W. Va. Code Ann. § 61-7-4(b)(5) (license requires attestation that "the applicant has not been convicted of a felony").

restriction." *Bogle*, 717 F.3d at 281-82; *see United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022) (prior panel decisions are "binding authority from which [this Court] cannot deviate" unless, as relevant here, "the Supreme Court's conclusion in a particular case broke the link on which [this Court] premised [its] prior decision, or undermined an assumption of that decision" (alterations and quotation marks omitted)).

## B. The Historical Record Confirms that Applying § 922(g)(1) to Zherka Does Not Implicate the Second Amendment

Even if Zherka's challenge were not foreclosed by binding precedent and the plain text of the Second Amendment, a review of "this Nation's historical tradition of firearm regulation" would compel the same conclusion. *Bruen*, 142 S. Ct. at 2126. Several courts have traced the long historical tradition, both before and around the time of the Nation's founding, of disarmament of those who demonstrated disobedience of the sovereign, whether or not this disobedience bore any relationship to violence or dangerousness. Most recently, the Third Circuit became the first court of appeals to weigh in on the constitutionality of § 922(g)(1) as applied to a person convicted of a non-violent crime —there, a state-law misdemeanant—in the wake of *Bruen*. *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022). The court held that "although the Supreme Court has not provided an exhaustive historical analysis of the full scope of the Second Amendment, *Heller*, *McDonald*, and *Bruen* provide a window into the Court's view of the status-based disarmament of criminals: that this group falls outside 'the people'—

whether or not their crimes involved violence—and that § 922(g)(1) is well-rooted in the nation's history and tradition of firearm regulation." *Id.* at 273 (quotation marks, alterations, and citations omitted). In short, "the historical record shows that legislatures had broad discretion to prohibit those who did not respect the law from having firearms," because "[t]hose whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms." *Id.* at 271, 273. Before *Bruen*, the D.C. Circuit had already reached a similar conclusion based on its examination of text and history —that is, at "the first step" of its previously governing framework, without "reach[ing] the second step" that has been abrogated by *Bruen. Medina*, 913 F.3d at 158-61 ("reject[ing] the argument that non-dangerous felons have a right to bear arms" based on an analysis of, among other things, "felony crime as it would have been understood at the time of the Founding" and "historical evidence" regarding founding-era legislative disarmament of certain "nonviolent persons").

"[T]he pertinent historical periods were replete with laws 'relevantly similar' to the modern prohibition on felon firearm possession because they categorically disqualified people from possessing firearms based on a judgment that [they] were untrustworthy parties to the nation's social compact." *Range*, 53 F.4th at 274 (quoting *Bruen*, 142 S. Ct. at 2132). To begin with, England, from the second half of the seventeenth century onward, repeatedly disarmed individuals— Protestants who did not belong to the Church of England, as well as Catholics—"because their religious status was viewed as a proxy for disobedience to the

Crown's sovereign authority and disrespect for the law, placing them outside the civic community of law-abiding citizens." *Id.* at 275. The 1689 English Bill of Rights contained a provision—the "predecessor to our Second Amendment," *Bruen*, 142 S. Ct. at 2141—that accorded Protestants the right to have "'suitable'" arms, but only "'as allowed by Law,'" demonstrating that "the legislature . . . had the power and discretion to determine who was sufficiently loyal and law-abiding to exercise the right to bear arms." *Range*, 53 F.4th at 275 (quoting 1 W. & M., Sess. 2, ch. 2, § 7 (Eng. 1689)).

Colonial America followed suit. "The earliest firearm legislation in colonial America prohibited Native Americans, Black people, and indentured servants from owning firearms," in addition to disarming Catholics who "were subject to disarmament without demonstrating a proclivity for violence"—that is, broad, status-based groups that were not characterized by an individual propensity for violence. *Range*, 53 F.4th at 276 (citing Michael A. Bellesiles, *Gun Laws in Early America: The Regulation of Firearms Ownership, 1607-1794*, 16 Law & Hist. Rev. 567, 578-79 (1998)).[5] The colonial period also "furnishes numerous

---

[5] While the specific "status-based regulations of this period are repugnant (not to mention unconstitutional)," the regulations show that, with respect to the right to bear arms, it has long been established that "legislatures ha[ve] the power and discretion to use status as a basis for disarmament." *Range*, 53 F.4th at

examples in which full-fledged members of the political community as it then existed—i.e., free, Christian, white men—were disarmed due to conduct evincing inadequate faithfulness to the sovereign and its laws." *Id.* (discussing colonial disarmament of people who were accused of "being Antinomians, those who viewed their salvation as exempting them from the law" (citing Edmund S. Morgan, *The Case Against Anne Hutchinson*, 10 New Eng. Q. 635, 637-38, 644, 648 (1937); Ann Fairfax Withington & Jack Schwartz, *The Political Trial of Anne Hutchinson*, 51 New Eng. Q. 226, 226 (1978))). Followers of those whose beliefs were deemed a "disavowal of the rule of law" were disarmed, without regard for proclivity for violence. *Id.*

Then, during the Revolutionary War era, the new states conditioned the right to bear arms on "fidelity to the revolutionary regime" and willingness to "abide by the newly sovereign state's legal norms," even where state constitutions protected the right to bear arms. *Id.* at 278 (citing various colonial statutes, including a 1777 Pennsylvania statute disarming white male inhabitants who refused to swear an oath of loyalty, Act of June 13, 1777, § 1 (1777), 9 The Statutes at Large of Pennsylvania from 1652-1801 110, 111 (William Stanley Ray ed., 1903); a 1775 statute passed by Connecticut colonists that disarmed those who defamed the

---

276 n.18; *accord id.* at 277 n.19. Moreover, "status-based bans did not historically distinguish between violent and non-violent members of disarmed groups." *Id.* at 276 n.18.

Continental Congress; and a 1777 Virginia statute that similarly disarmed those who refused to take a loyalty oath, An Act to Oblige the Free Male Inhabitants of this State Above a Certain Age to Give Assurance of Allegiances to the Same, and for Other Purposes ch. III (1777), 9 Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature in the Year 1619 281, 281 (William W. Hening ed., 1821)); *accord Medina*, 913 F.3d at 158-59 (noting state's disarmament of those who would not swear loyalty to the United States, showing that "the public in the founding era understood that the right to bear arms could exclude at least some nonviolent persons"). These laws "defined membership of the body politic by disarming individuals" based not on propensity for violence, but "disrespect for the rule of law and the norms of the civic community," and evidenced the "authority and broad discretion" of the legislatures to make those judgments. *Id*. at 279 (quotation marks omitted).

The same practice continued around the time of the Constitution's ratification. A "'highly influential' 'precursor' to the Second Amendment" was "the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting *Heller*, 554 U.S. at 604). That included a proposal to protect the right to bear arms, prohibiting "'disarming the people or any of them *unless for crimes committed*, or real danger of public injury from individuals.'" *Range*, 53 F.4th at 280 (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 665 (1971) (emphasis in

*Range*)). Thus, the founding generation viewed "crimes committed—violent or not"—as independent grounds for disarmament. *Id.* This proposal's "use of the disjunctive 'or'" shows that its authors "distinguished between criminal convictions and dangerousness, and provided that *either* could support disarmament." *Id.*; *accord Medina*, 913 F.3d at 158-59 (same proposal's "use of the word 'or'" demonstrates that "criminals, in addition to those who posed a 'real danger' . . . were proper subjects of disarmament").

In addition to the foregoing disarmament laws, it is also highly relevant to "consider felony crime as it would have been understood at the time of the Founding." *Medina*, 913 F.3d at 158-59; *accord Range*, 53 F.4th at 280-81. At the founding, a felon faced penalties including estate forfeiture and death. *See* 4 William Blackstone, Commentaries on the Laws of England *95 (Harper ed. 1854). Indeed, "[c]apital punishment for felonies was 'ubiquit[ous]' in the late Eighteenth Century and was 'the standard penalty for all serious crimes.'" *Medina*, 913 F.3d at 158 (quoting *Baze v. Rees*, 553 U.S. 35, 94 (2008) (Thomas, J., concurring in the judgment)). "[I]t is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *Id.* And "felonies were—and remain—the most serious category of crime." *Id.* Thus, as several courts have explained, "tradition and history" show that "those convicted of felonies are not among those entitled to possess arms" under the Second Amendment. *Id.* at 158, 160; *accord Range*, 53 F.4th at 280-81 ("[G]iven the draconian punishments that traditionally could be imposed" for "non-

violent" felonies including larceny, repeated forgery, and false pretenses, "the comparatively lenient consequence of disarmament under 18 U.S.C. § 922(g)(1) is permissible"); *Hamilton*, 848 F.3d at 626 ("Where the sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects grave misjudgment and maladjustment . . . ." (quotation marks omitted)).

In short, as the Third Circuit concluded, "legislatures traditionally used status-based restrictions to disqualify categories of persons from possessing firearms . . . not merely based on an individual's demonstrated propensity for violence, but rather to address the threat purportedly posed by entire categories of people to an orderly society and compliance with its legal norms." *Range*, 53 F.4th at 282. And in doing so they had "both authority and broad discretion to determine when individuals' status or conduct evinced such a threat sufficient to warrant disarmament." *Id*. Section 922(g)(1) thus rests on a series of "well-established and representative historical *analogue[s]*," which satisfies the test set forth in *Bruen*. 142 S. Ct. at 2133 (emphasizing that historical examples do not need to be "historical *twin[s]*" and that "a modern-day regulation" will pass constitutional muster even if it "is not a dead ringer for historical precursors").

In its dependence on adherence to legal and moral norms, the right to bear arms is analogous to civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, *see Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); the right to serve on a jury, 28 U.S.C.

§ 1865(b)(5); and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998). *See Medina*, 913 F.3d at 160 ("The commission of a felony often results in the lifelong forfeiture of a number of rights, including the right to serve on a jury and the fundamental right to vote. A prohibition on firearm ownership, like these other disabilities, is a reasonable consequence of a felony conviction . . . ." (citations omitted)). Just as Congress and the states have required persons convicted of felonies to forfeit civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony conviction." *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in most of the judgment).

To the extent Zherka's challenge rests on the proposition that his particular felony is not serious enough to support disarmament, he is mistaken. The Third Circuit was correct in its recent conclusion that anyone who was convicted of a crime that is disqualifying under § 922(g)(1) "may be disarmed consistent with the Second Amendment." *Range*, 53 F.4th at 285. And even if this Court were to consider the specific sort of felony that Zherka committed, that would only serve to confirm the conclusion that § 922(g)(1) is constitutional as applied to fraud offenders such as him.

"American courts have, without exception, included [fraud] within the scope of moral turpitude." *Jordan v. De George*, 341 U.S. 223, 229 (1951). It is "a thought-out crime that demonstrates disdain for the rights of others and disrespect for the law." *Hatfield v. Barr*, 925 F.3d 950, 951 (7th Cir. 2019); *accord Folajtar v.*

*Attorney General*, 980 F.3d 897, 910 (3rd Cir. 2020) (tax fraud is a "serious crime"); *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (fraud is "a serious federal felony for conduct broadly understood to be criminal"); *Medina*, 913 F.3d at 154, 160 (rejecting challenge brought by felon convicted of mortgage application fraud—"a serious crime, *malum in se*, that is punishable in every state"); *Hamilton*, 848 F.3d at 627 ("Theft, fraud, and forgery are not merely errors in filling out a form or some regulatory misdemeanor offense; these are significant offenses reflecting disrespect for the law."). As the district court observed, Zherka "committed a grave offense demonstrating 'no respect for the truth or for his legal, let alone moral obligations to tell it.'" (JA 126 (quoting 14 Cr. 545, ECF No. 194 (sentencing transcript) at 91:8-10)). Besides its inherent demonstration of unwillingness to abide by the law or societal norms, the nature of a fraud crime reasonably supports an inference that offenders cannot be trusted, for instance, to complete background checks accurately, use firearms responsibly, or store them safely. *Cf. Folajtar*, 980 F.3d at 909 (discussing Department of Justice statistics showing that "twenty percent of fraud or forgery offenders" "were subsequently arrested for a violent crime within five years of their release from state prison"). Thus, a person convicted of fraud is not the sort of law-abiding, responsible citizen to whom *Heller* referred. (JA 126 (a person's "status as a felon, albeit a non-violent one, necessarily removes him from the category of 'law-abiding, responsible citizens' entitled to possess firearms" (quoting *Heller*, 554 U.S. at 635))).

In sum, the district court correctly concluded that Supreme Court precedent and this nation's historical tradition require rejection of Zherka's Second Amendment challenge.

## C. Remand and Vacatur Is Not Warranted

Finally, the Supreme Court's opinion in *Bruen*, issued three months after the district court's opinion, does not merit vacatur and remand here.

Following the Supreme Court's recognition of an individual right to bear arms in *Heller*, courts of appeals, including this Court, developed a two-step framework to adjudicate Second Amendment challenges, under which a court first considers "whether the restriction burdens conduct protected by the Second Amendment"; if not, "the legislation stands," but otherwise, the court will "move to the second step of our inquiry, in which we must determine and apply the appropriate level of [means-end] scrutiny." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015).

In *Bruen*, the Supreme Court held that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context"; rather, the "firearms regulation [must be] part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S. Ct. at 2127. While it deemed the two-step test to contain "one step too many," the Supreme Court declared that "[s]tep one of the predominant framework is broadly consistent with *Heller*." *Id.*

Here, the district court concluded that Zherka's claim "fails at step one of the analysis," and therefore it "need not and does not reach the second step of the analysis." (JA 127).[6] The opinion below is thus unaffected by the Supreme Court's rejection of means-end scrutiny that the district court never applied.

The Third Circuit recently confronted a similar situation. In *Range*, the district court had applied the pre-*Bruen* two-step test, but "concluded that Range's challenge failed at step one" of the Third Circuit's pre-*Bruen* framework for challenges to § 922(g)(1). 53 F.4th at 267. *Bruen* was decided while the appeal was pending, prompting the court to ask the parties for supplemental briefing, including on whether the case should be remanded to the district court. *See id.* at 267-68. Carefully examining *Bruen* itself and the historical record in light of *Bruen*, the court concluded that remand was unnecessary because "[t]hose whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms," and thus the nonviolent but fraudulent challenger's "disarmament under 18 U.S.C. § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulation." *Id.* at 273, 285.

––––––––––

[6]   In fact, in the district court Zherka forfeited any argument based on means-end scrutiny at the second step. (JA 127 n.7 ("Therefore, even if the Court were to reach step two of the analysis, Plaintiff has abandoned these aspects of his Second Amendment claim.")).

The situation presented here thus contrasts with, for example, cases in which appellate courts have vacated and remanded dismissals to district courts to consider the impact of *Bruen* where the lower court's decision was made at step two of the prior two-step framework, relying on the means-end analysis the Supreme Court has disavowed, or concerned aspects of New York's firearm licensing regime directly affected by *Bruen*. (Brief for Plaintiff-Appellant ("Br.") 11-14 (citing *Taveras v. New York City*, No. 21-398, 2022 WL 2678719, at *1 (2d Cir. July 12, 2022) (summary order) (remanding where district court evaluated challenge to New York City firearm license denial and where, "[c]onsistent with the second step of the analysis dictated by this Court's prior precedent, the district court proceeded to apply intermediate scrutiny to the licensing provisions at issue"); *Sibley v. Watches*, No. 21-1986, 2022 WL 2824268, at *1 (2d Cir. July 20, 2022) (summary order) (remanding "constitutional challenges to New York's law criminalizing the unlicensed possession of certain weapons"); *Duncan v. Bonta*, 49 F.4th 1228 (9th Cir. 2022) (remanding to district court following Supreme Court's grant of certiorari, vacatur, and remand of Ninth Circuit decision applying intermediate scrutiny to California firearms law); *Jones v. Bonta*, 47 F.4th 1124, 1125 (9th Cir. 2022) (vacating and remanding decision applying intermediate scrutiny to certain claims and strict scrutiny to others); *Martinez v. Villanueva*, No. 20-56233, 2022 WL 2452308, at *1 (9th Cir. July 6, 2022) (summary order) (vacating and remanding decision applying strict scrutiny to COVID-era restrictions on gun shops); *Oakland Tactical Supply, LLC v. Howell Township*, No. 21-

1244, 2022 WL 3137711, at *1 (6th Cir. Aug. 5, 2022) (unreported opinion) (vacating and remanding where it was unclear how or whether the district court had applied prior Second Amendment framework to zoning challenge brought by outdoor shooting range))).

Because the district court dismissed Zherka's claim based solely on its conclusion that Zherka falls within a class of people who are excluded from the historical scope of the Second Amendment's protection, its decision is unlike those cases and is unaffected by *Bruen*. Remand is accordingly unnecessary.

## POINT II

### The Absence of an Opportunity to Prove Additional Facts Does Not Deprive Zherka of Due Process

Zherka fares no better in asserting that either the Second Amendment or the Fifth Amendment entitles him to an opportunity to challenge his dispossession by offering additional facts that are irrelevant to the Second Amendment analysis. Zherka correctly notes that the mechanism previously provided by 18 U.S.C. § 925(c), which allowed felons to apply to the Attorney General for relief from § 922(g)(1), is no longer available. *See Medina v. Sessions*, 279 F. Supp. 3d 281, 293 (D.D.C. 2017) (explaining that Congress has defunded § 925(c) since 1992, "citing its unworkability and high stakes"; citing S. Rep. No. 102-353, at 19 (1992)). As the district court correctly held, however, Zherka's argument that he is entitled to present evidence on his current dangerousness and press for reinstatement of

his ability to possess firearms is precluded by the Supreme Court's precedent.

In *Connecticut Department of Public Safety v. Doe*, the Court held that "due process does not require the opportunity to prove a fact that is not material." 538 U.S. 1, 4 (2003). In that case, a convicted sex offender sought a hearing to determine if he was currently dangerous before being subject to a state's public disclosure of a sex offender registry. *Id.* at 5-6. The Supreme Court reasoned that such a hearing would be "a bootless exercise": "even if [the offender] could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed." *Id.* at 7-8.

The same is true here: since § 922(g)(1) validly applies to all felons on the basis of their underlying convictions, a particular felon's later assertions of non-dangerousness are not material to whether the bar to possessing firearms applies, and therefore due process does not require affording felons a hearing to demonstrate they are not dangerous.[7] Zherka cannot distinguish *Doe* by arguing that § 922(g)(1), unlike the Connecticut statute challenged in *Doe*, deprives him of a constitutionally protected liberty interest. (Br. 34). To

---

[7] For the same reason, Zherka's suggestion that the district court erred by dismissing his complaint on the pleadings is misplaced (Br. 22); the facts necessary to establish his exclusion from the ambit of the Second Amendment were present on the face of the complaint.

the contrary, the Supreme Court assumed for the pur-
pose of its ruling that the sex offender had been "de-
prived of a liberty interest." *Doe*, 538 U.S. at 7. Thus,
even where a constitutional right is at issue, there is
no constitutional entitlement to a hearing if that hear-
ing would not address a material fact.

Because § 922(g)(1) dispossesses all felons of fire-
arms, and Zherka is indisputably a felon, due process
does not require a hearing to allow Zherka to dispute
the irrelevant issue of whether or not he is dangerous.
And Congress, which previously provided for the res-
toration of felons' gun rights if they could prove they
were not likely to be dangerous and that restoration is
in the public interest, "abandoned that approach after
finding that the dangerousness inquiry was a 'very dif-
ficult' and time-intensive task," *Kanter*, 919 F.3d at
450 (quoting H.R. Rep. No. 102-618, at 14 (1992)), and
that "too many of these felons whose gun ownership
rights were restored went on to commit violent crimes
with firearms," *id.* (quoting H.R. Rep. No. 104-183, at
15 (1995)). Congress acted both constitutionally and
sensibly in doing so: "categorical disqualifications are
permissible" under the Second Amendment, and "Con-
gress is not limited to case-by-case exclusions of per-
sons who have been shown to be untrustworthy with
weapons, nor need these limits be established by evi-
dence presented in court." *Skoien*, 614 F.3d at 641; *cf.
Binderup v. Attorney General*, 836 F.3d 336, 350 (3d
Cir. 2016) (en banc) ("There is no historical support for
the view that the passage of time or evidence of reha-
bilitation can restore Second Amendment rights that
were forfeited."). And "[a]s a practical matter," employ-
ing an "amorphous 'dangerousness' standard" to

delineate the right to bear arms would "require the government to make case-by-case predictive judgments before barring the possession of weapons by convicted criminals, illegal aliens, or perhaps even children." *Medina*, 913 F.3d at 160. Neither the Second Amendment nor the Constitution's guarantees of due process require such an "expansive and limitless" right to bear arms. *Id*.

## CONCLUSION

**The judgment of the district court should be affirmed.**

Dated:    New York, New York
             December 14, 2022

                          Respectfully submitted,

                          DAMIAN WILLIAMS,
                          *United States Attorney for the*
                          *Southern District of New York,*
                          *Attorney for Defendant-Appellee.*

LUCAS ISSACHAROFF,
BENJAMIN H. TORRANCE,
     *Assistant United States Attorneys,*
                  *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 7,574 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: LUCAS ISSACHAROFF,
*Assistant United States Attorney*